PEOPLES TRUST CO., AND PEOPLES SAFE DEPOSIT CO., PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 9728. Promulgated March 9, 1928.

*W. H. Cloud, Esq.*, and *Eugene M. Lynn, C. P. A.*, for the petitioners.

*L. A. Luce, Esq.*, for the respondent.

## OPINION.

LANSDON: The only issue to be determined here is whether in law the transactions in question resulted in immediate losses deductible in the taxable years in which sustained, or whether they created debts that became deductible from the petitioner's gross income in the year in which worthlessness was determined. It is alleged thefts or embezzlements occurred in 1919, 1920, and 1921, in connection with the original transaction or the renewals of the paper involved. The notes involved were not definitely known to be worthless until some time in 1922.

. The petitioner is a bank. During the taxable years it was managed by its president, who was the principal witness on its behalf at the hearing of this proceeding. Such president and manager testified that no loans were made or securities purchased except with his approval. It is a fair inference that he could have prevented any or all of the original transactions here involved. It must be presumed that he considered the financial responsibility of the makers of these notes and the value of the collateral before he approved the investment of the funds of the bank in such paper. The notes were secured by chattel mortgages, and by the gurantee of Smith & Ricker. They were negotiated by parties known to the president of the petitioner. Regardless of the collateral, the notes were the evidences of the debt and the responsibility for payment was in the first instance in the makers thereof.

It is the theory of the petitioner that Ricker took advantage of his position as a stockholder and director of the bank to secure its funds by false and fraudulent transactions that amounted to theft or embezzlement. The offenses charged are crimes under the laws of Missouri. Neither the public prosecutor nor the officers or stockholders of the petitioner caused Ricker to be prosecuted for such alleged crimes. Ricker was not the custodian of the property of the petitioner in any capacity which gave him the care or control thereof. He was merely a director and officer of a corporation which had selected a president as the manager and custodian of its property. Nor can it be said, in our opinion, that money paid by the petitioner for the notes in question was converted to the use of Ricker merely because he was a partner in a firm that owned one-half the stock of one of the makers of such paper. It is urged that the president of the petitioner was not informed of the fact that the firm of Smith & Ricker owned 50 per cent of the stock of the Nations Land & Cattle Co. If this is true, he certainly made very little effort to discover the names of the stockholders of the company to which he was loan-

1268

ing large sums of money. Whatever moral obligation there may have been upon Ricker to disclose his connection with the cattle company, it is clear that petitioner exercised little of the usual business precaution necessary to establish the identity of the owners of an enterprise to which it was advancing large sums of money.

Petitioner contends that the failure of Smith & Ricker to replace renewed chattel security for the notes involved in the second transaction was a fraudulent act that resulted in loss at that date and also that the cattle enumerated in the chattel mortgages taken as security for such notes probably did not exist at the date of the original transaction. This may be true without in any way affecting the issue here. The debt was created when the notes were negotiated, and the fraud, if any, affected only the security. This same state of facts and our conclusion therefrom applies also to the alleged duplication of collateral security for the notes involved in the first transaction. Notwithstanding the probability of fraud in connection with the sale of the notes here involved, we are of the opinion that the transactions created debts which were not definitely known to be worthless until some time in the year 1922. *A. W. Skaer* v. *Commissioner*, 10 B. T. A. 247.

Reviewed by the Board.

*Judgment will be entered for the respondent.*